Greg Lockwood, OSB 114415
HITT HILLER MONFILS WILLIAMS LLP
411 SW Second Avenue, Suite 400
Portland, OR 97204
Telephone:  (503) 228-8870
Facsimile:   (503) 228-4250
E-mail Address: glockwood@hittandhiller.com

     Of Attorneys for Robert West

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| ROBERT LEE WEST<br><br>               Plaintiff,<br><br>   v.<br><br>CITY OF PORTLAND, OREGON, and CITY OF PORTLAND POLICE BUREAU,<br><br>               Defendants. | Case No. 3:15-cv-00715-ST<br><br>FIRST AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED |

     Plaintiff Robert Lee West alleges the following facts in support of his claims for damages.

## PARTIES

     1.    Robert West is a citizen of Portland, Oregon. Mr. West works as a video-journalist filming Portland, Oregon area police officers.  He is the Chief Journalist and Chief Videographer for www.filmthepolice911.com, which contains hundreds of videos of police officers operating in their official capacity.

     2.    Mr. West's journalistic mission is to record and distribute newsworthy content. He has a secondary goal of holding the police accountable for their official actions.

3. Defendant City of Portland is an incorporated city in the state of Oregon, and a person for the purposes of 42 U.S.C. § 1983.

4. Charles Hales is the Mayor of the City of Portland.

5. Defendant Portland Police Bureau ("Portland Police" or "Police") is an agency of the City of Portland, Oregon, providing public safety and policing services.

6. Larry O'Dea is the Chief of the Portland Oregon Police Bureau and has managerial responsibilities over the Bureau's officers.

7. Under the supervision of the Mayor's Office, the Portland Oregon Police through its officers, who are agents of the Bureau, perform the duties and mission of serving the community.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this case based on federal question, civil rights, and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. § 1983.

9. Venue is proper under 28 U.S.C. § 1391 because Mr. West is a citizen of Portland, Oregon, the events occurred entirely in Portland, Oregon, and the defendants also are located in Portland, Oregon.

10. On March 18, 2015, Mr. West filed a timely Tort Claim Notice with the City of Portland, pursuant to ORS 30.275.

11. Incorporated cities and their agencies in the state of Oregon may be sued for personal injury actions pursuant to ORS 30.020.

12. This personal injury lawsuit requests damages of $10,000 or less. Pursuant to ORS 20.080, plaintiff submitted a demand on defendants 30 days before filing suit. If successful, plaintiff's attorney's fees shall be awarded.

**FACTS RELATING TO PLAINTIFF'S CLAIMS**

13. As a video-journalist who focuses on filming the police, Mr. West films in areas with frequent police activity.

14. Mr. West also films protests based on the likelihood of police activity and the newsworthy nature of protests.

15. Oregon law protects a citizen's right to record police officers acting in their official capacity in public.

16. Police activities are frequently newsworthy and frequently covered in digital and print media.  Public recordings of police activities have become increasingly prominent in recent years because of improved personal technology and in response to claims of police misconduct.

17. Citizen and freelance journalism was, and remains, an important feature of mainstream news outlets.

18. Police activities are matters of public concern.

19. Many members of Portland Police know Mr. West and know that he films them performing their official duties.  Mr. West has been subject to harassment by Portland Police for filming them.

20. On or about November 29 and 30, 2014, plaintiff attended a protest in downtown Portland, Oregon.

21. The protest was organized in response to a Missouri grand jury's decision to not indict Darren Wilson for the shooting of Michael Brown, a young man who was shot and killed by a police officer in Ferguson, Missouri.  Mr. Brown's case had gained national attention, prompting protests all over the country.

22. On the night of the protest, there were dozens if not hundreds of Portland Police officers on the streets of downtown Portland to monitor the protest. The officers were acting in their official capacity and pursuant to the direction of the Portland Police Bureau and Chief O'Dea.

23. Plaintiff was filming the protests in Portland with a focus on police activities.

24. While filming these activities, at or near the intersection of Fifth Avenue and Morrison Street in Portland, Oregon, police officers threw a crowd dispersion device, commonly referred to as a "flash bang," in Mr. West's direction. The flash bang exploded within inches of Mr. West.

25. Based on information and belief, a flash bang is an incendiary/explosive device that creates a bright light, a "flash", and a loud noise, a "bang."

26. Based on information and belief, flash bangs are intended to shock nearby persons' senses and disorient them.

27. Mr. West was shocked, startled, disoriented, and physically and emotionally perturbed by the use of the flash bang.

28. Later that evening, at or near the intersection of SW Second Avenue and SW Main Street in Portland, Oregon, Mr. West was filming protesters performing a "die-in", a form of protest where protesters lay in the street to symbolize the time Michael Brown spent in the street following his shooting.

29. Police officers, seeking to wind down the protest performed a kettle maneuver, blocking in the protesters from all sides of the intersection, only letting a few out at a time.

30. Based on information and belief, kettling is a police technique intended to wear out the persons trapped between the officers blocking the roads, causing them to get tired, hungry, and thirsty and less rowdy as they are slowly let out, like steam from a kettle.

31. At this time, the police told the dozens of protesters in the area to get into the middle of the street.

32. Mr. West complied with the instruction.

33. The vast majority of people in the kettle were released without charges.

34. Although Mr. West complied with police instructions, he was not released like the majority of the people, but was instead arrested.

35. The police arrested, detained, and charged only about 10 people, several of whom were journalists like Mr. West.

36. Unlike the majority of the people protesting, who were released without charge, Mr. West was unjustifiably arrested and taken to East Precinct for booking and processing.

37. Mr. West had his movement restrained by the police officers. He was handcuffed and was subjected to the Police's control.

38. Upon arrival at East Precinct in Portland, Oregon, Mr. West informed the officers of his preexisting health problems and informed them that he was feeling light-headed and had a headache.

39. Mr. West also requested water. The police initially ignored his requests for water and did not provide him with medical care.

40. Mr. West's condition worsened while in police custody. He had a severe headache, dizziness, and elevated pulse and blood pressure.

41. After about two hours in custody, Mr. West was given a citation in lieu of confinement, transported from the precinct in an ambulance, and received medical treatment at Legacy Emanuel hospital.

42. At the hospital, doctors noted that he had an elevated pulse and higher than normal blood pressure. Mr. West underwent several tests, including an MRI of his head. The doctors diagnosed him with dizziness, headache, dehydration, and hypertension. He was discharged later that morning.

43. Mr. West incurred $4,832.25 in bills for medical services, which were directly and proximately caused by the defendants' actions.

44. Additionally, Mr. West suffered pain and emotional suffering resulting in the amount of $5,178.75 in noneconomic damages, which were directly and proximately caused by the defendants' actions.

45. On December 31, 2014, Multnomah County Prosecutors decided to "no complaint" the case and not prosecute Mr. West.

46. Based on information and belief, the prosecutor's office declined to prosecute because the police did not have probable cause to perform an arrest based on the charging instrument and the facts of the case. Specifically, the prosecutor's office declined to prosecute because the evidence would show that Mr. West was detained and arrested for disorderly conduct in spite of following police orders.

**CLAIMS FOR RELIEF**

**CLAIM 1: 42 U.S.C. § 1983**
**COUNT I (VIOLATION OF 1ST AMENDMENT FREEDOM OF PRESS)**

47. Plaintiff incorporates paragraphs 1-46 by reference.

48.     The City of Portland and the Portland Police Bureau are persons for the purposes of 42 U.S.C. § 1983.

49.     Other persons, Portland Police Officers, whose names are unknown at this time, are also persons under 42 U.S.C. § 1983.

50.     The Portland Police Bureau and its officers cited Mr. West for disorderly conduct. They did so acting under the color of the law.

51.     Based on information and belief, Mr. West was arrested because he was a journalist covering police activity.

52.     But for his coverage of the protests, Mr. West would not have been arrested.

53.     Arresting journalists has a chilling effect on journalists' coverage of the police and would deter an ordinary journalist from covering police activity.

54.     In arresting Mr. West, defendants deprived him of his protections under the First Amendment of the U.S. Constitution, specifically: "Congress shall make no law… abridging the freedom of speech, or of the press…."

55.     Based on information and belief, the Portland Police took these actions based on custom and practice of discouraging news coverage of their official duties.

56.     The actions described above caused Mr. West's damages alleged in paragraphs 43-44.

57.     Pursuant to 42 U.S.C. § 1988, plaintiff is entitled to attorney's fees if the action is successful.

**CLAIM 1: 42 U.S.C. § 1983**
**COUNT II (VIOLATION OF 1ST AMENDMENT FREEDOM OF ASSEMBLY)**

58.     Plaintiff incorporates paragraphs 1-50 by reference.

59. Based on information and belief, Mr. West was arrested because he was a participating in a peaceful protest.

60. Mr. West was not engaged in any violent or destructive behavior.

61. But for his participation in the protests, Mr. West would not have been arrested.

62. Arresting protesters has a chilling effect on citizens exercising their first amendment right to assemble and would deter an ordinary person from participating in a protest.

63. In arresting Mr. West, defendants deprived him of his protections under the First Amendment of the U.S. Constitution, specifically: "Congress shall make no law… abridging the… right of the people peaceably to assemble…."

64. Based on information and belief, the Portland Police took these actions based on custom and practice of discouraging protests against police activity.

65. The actions described above caused Mr. West's damages alleged in paragraphs 43-44.

66. Pursuant to 42 U.S.C. § 1988, plaintiff is entitled to attorney's fees if the action is successful.

## CLAIM 2: ASSAULT/BATTERY
## COUNT I (FLASH BANG)

67. Plaintiff incorporates by reference paragraphs 1-46.

68. Police intentionally threw a flash bang in Mr. West's direction in order to cause fear or apprehension that offensive conduct would occur.

69. The flash bang was neither necessary nor reasonable for the police activity being undertaken in that scenario.

70. The flash bang caused Mr. West to feel apprehension that harmful or offensive contact would occur.

71. Mr. West was harmfully contacted by the flash bang.

72. Mr. West suffered physical and emotional damages as a direct and proximate result of the police's action as alleged in paragraphs 43-44.

## CLAIM 2: ASSAULT/BATTERY
## COUNT II (CONTACT INCIDENT TO ARREST)

73. Plaintiff incorporates by reference paragraphs 1-46.

74. While arresting plaintiff, police used force to restrain and control Mr. West. They placed him in handcuffs and controlled his movement.

75. The police intentionally took these actions to offensively contact Mr. West.

76. Mr. West suffered physical and emotional damages as a direct and proximate result of the police's action as alleged in paragraphs 43-44.

## CLAIM 3: NEGLIGENCE
## COUNT I (DEPRIVATION OF WATER AND CARE)

77. Plaintiff incorporates by reference paragraphs 1-46.

78. When Mr. West was arrested, he was under the control and care of the Portland Police.

79. The Portland Police had a duty to exercise reasonable care to avoid causing harm to Mr. West.

80. Mr. West informed the police of his medical conditions, both preexisting and current.

81. Mr. West informed the police that he needed water.

82. Initially, the police failed to provide medical care or water.

83. Because Mr. West was bound and detained, he could not access water or care himself. Such aid could only be rendered by the police.

84. The Police breached their duty of care by failing to provide prompt medical care, ignoring information about his medical conditions, and depriving him of water despite Mr. West's requests.

85. These actions created a foreseeable risk that Mr. West would require emergency medical care, as described above, which Mr. West in fact sought and received.

86. The Police's actions were the direct and proximate cause of the damages alleged in paragraphs 43-44.

### CLAIM 3: NEGLIGENCE
### COUNT II (IMPROPER USE OF FLASH BANG)
### (ALTERNATIVE CLAIM TO CLAIM 2, COUNT I)

87. Plaintiff incorporates by reference paragraphs 1-46.

88. The Portland Police had a duty to exercise reasonable care to avoid causing harm to Mr. West.

89. The Portland Police breached that duty of care when they used a flash bang device, which detonated dangerously close to Mr. West.

90. The use of the flash bang was unnecessary.

91. Throwing a flash bang created a foreseeable risk of injury to Mr. West.

92. Mr. West sustained injuries from the police's use of a flash bang.

93. The Police's actions were the direct and proximate cause of the damages alleged in paragraphs 43-44.

### CLAIM 4: FALSE ARREST
### (ALTERNATIVE CLAIMS TO CLAIM 1)

94. Plaintiff incorporates by reference paragraphs 1-46.

95. When the Portland Police arrested Mr. West for disorderly conduct, they lacked probable cause to do so.

96.     The Portland Police let most other protesters go because there was not probable cause for arrest, but arrested and held Mr. West despite the fact he was identically situated.

97.     In arresting Mr. West, the Portland Police intentionally acted to confine him unlawfully and against his will.

98.     Mr. West was aware of his confinement as he was handcuffed and held in a cell.

99.     Based on information and belief and the Multnomah County District Attorney's Office's decision to no complaint the case, the Portland Police lacked probable cause and did not have a lawful reason for depriving Mr. West of his liberty or charging him with a crime.

100.    Mr. West suffered physical and emotional damages as a direct and proximate result of the police's action as alleged in paragraphs 43-44.

WHEREFORE, Plaintiff prays for judgment against the defendants as alleged above in the amount of $10,000, reasonable attorney's fees, costs and disbursements, and for any other relief the Court determines to be just and equitable.

DATED THIS 4th day of September, 2015.

HITT HILLER MONFILS WILLIAMS LLP

By: /s/ Greg Lockwood
Greg Lockwood, OSB No. 114415
Of Attorney for Plaintiff
Tel: 503-228-8870
Fax: 503-228-4250
Email: glockwood@hittandhiller.com
Trial Attorney: Greg Lockwood